UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

RAYMOND J. CASCELLA, MANOS, INC.,
a Florida corporation, and ROLAND
CARLSON

                    Plaintiffs,

-vs-                                                    Case No.  6:04-cv-1822-Orl-19DAB

CANAVERAL PORT DISTRICT d/b/a
CANAVERAL PORT AUTHORITY as
provided by Florida Senate Bill No. 3040,
CHAPTER 95-465, LAWS OF FLORIDA,
Commissioners RODNEY S. KETCHAM,
RAYMOND P. SHARKEY, DONALD N.
MOLITOR, RALPH J. KENNEDY, JOE D.
MATHENY in their individual and official
capacities, HAROLD T. BISTLINE, Florida
Bar. No. 0337218, and WILLIAM P.
BANCROFT, employees, official capacity
and individual capacity, singly, jointly and
severally,

                    Defendants.
_____

# ORDER

This case comes before the Court on the following:

1.     The Motion for Summary Judgment of Defendants Canaveral Port District d/b/a

       Canaveral Port Authority, Commissioners Rodney S. Ketcham, Raymond P. Sharkey,

       Donald N. Molitor, Ralph J. Kennedy, Joe D. Matheny, Attorney Harold T. Bistline,

       and William P. Bancroft.  (Doc. No. 63, filed on September 15, 2005);

2.     Deposition of Roland Carlson.  (Doc. No. 64, filed on September 15, 2005);

3.      Deposition of Raymond Cascella.  (Doc. No. 65, filed on September 15, 2005);

4.      Affidavit of Harold T. Bistline.  (Doc. No. 68, filed on September 16, 2005);

5.      Affidavit of Donald N. Molitor.  (Doc. No. 72, filed on September 21, 2005);

6.      Affidavit of Ralph J. Kennedy.  (Doc. No. 74, filed on September 21, 2005);

7.      Affidavit of Rodney S. Ketcham.  (Doc. No. 75, filed on September 21, 2005);

8.      Affidavit of Joe D. Matheny.  (Doc. No. 76, filed on September 21, 2005);

9.      Affidavit of Raymond P. Sharkey.  (Doc. No. 77, filed on September 21, 2005);

10.     Defendants' Request for Judicial Notice and Memorandum of Law in Support.

        (Doc. No. 79, filed on September 22, 2005);

11.     The Notice of Plaintiffs Raymond J. Cascella, Manos, Inc., and Roland Carlson of

        Filing the Depositions of Bill Bancroft and Dwight Fender in Opposition to

        Defendants' Motion for Summary Judgment.  (Doc. No. 81, filed on October 12,

        2005);

12.     Deposition of Bill Bancroft.  (Doc. No. 82, filed on October 12, 2005);

13.     Deposition of Dwight Fender.  (Doc. No. 83, filed on October 12, 2005);

14.     The Notice of Plaintiffs Raymond J. Cascella, Manos, Inc., and Roland Carlson of

        their Request to Take Judicial Notice.  (Doc. No. 84, filed on October 12, 2005);

15.     The Notice of Plaintiffs Raymond J. Cascella, Manos, Inc., and Roland Carlson of

        their Filing Defendants' Answers to Interrogatories in Presentation and

        Consideration of Plaintiffs' Response to Defendants' Motion for Summary

        Judgment.  (Doc. No. 85, filed on October 18, 2005);

16.     Defendant Raymond P. Sharkey's Responses to Plaintiff Raymond Cascella's

First Set of Interrogatories.  (Doc. No. 85-2, filed on October 18, 2005);

17.     Defendant Joe D. Matheny's Responses to Plaintiff Raymond Cascella's First Set of Interrogatories.  (Doc. No. 85-3, filed on October 18, 2005);

18.     Defendant Canaveral Port District's Responses to Plaintiff Raymond Cascella's First Set of Interrogatories.  (Doc. No. 85-4, filed on October 18, 2005);

19.     Defendant William P. Bancroft's Responses to Plaintiff Manos, Inc.'s First Set of Interrogatories.  (Doc. No. 85-5, filed on October 18, 2005);

20.     Defendant Canaveral Port District's Responses to Plaintiff Manos, Inc.'s First Set of Interrogatories.  (Doc. No. 85-6, filed on October 18, 2005);

21.     Defendant Ralph J. Kennedy's Responses to Plaintiff Manos, Inc.'s First Set of Interrogatories.  (Doc. No. 85-7, filed on October 18, 2005);

22.     Defendant Donald N. Molitor's Responses to Plaintiff Manos, Inc.'s First Set of Interrogatories.  (Doc.  No. 85-8, filed on October 18, 2005);

23.     Defendant Ralph J. Kennedy's Responses to Plaintiff Manos, Inc.'s First Set of Interrogatories.  (Doc. No. 85-9, filed on October 18, 2005, filed on October 18, 2005);

24.     The Response of Plaintiffs Raymond Cascella, Manos, Inc., and Roland Carlson to Defendants' Motion for Summary Judgment and Plaintiffs' Motion to Strike the Unsworn Affidavits of Rodney Ketcham, Raymond Sharkey, Donald Molitor, Ralph Kennedy, and Joe Matheny.  (Doc. No. 86, filed on October 18, 2005);

25.     Exhibits A-N of Plaintiffs Raymond Cascella, Manos, Inc., and Roland Carlson Submitted in Response to Defendants' Motion for Summary Judgment.  (Doc. No.

86, filed on October 18, 2005);

26.    Defendants' Response to Plaintiffs' Request to Take Judicial Notice.  (Doc. No.

87, filed on October 19, 2005);

27.    Defendants' Response to Plaintiffs' Motion to Strike Unsworn and Unsigned

Affidavits.  (Doc. No. 88, filed on October 19, 2005); and

28.    Defendants' Motion for Extension of Time to File Dispositive Summary

Judgment Motion.  (Doc. No. 61, filed on September 15, 2005).

## Background

Raymond Cascella leased land from the Canaveral Port District d/b/a Canaveral Port

Authority ("Port Authority").  (Doc. No. 14, Ex. A, "March 9, 2001 Bankruptcy Court Opinion,"

filed on January 5, 2005, p. 2 ).[1]  Prior to April 1, 1987, the Port Authority had leased the real

property to W.E. Yehnert Corporation.  (*Id.*)  On January 25, 1991, W.E. Yehnert Corporation

assigned the lease to Cascella.  (*Id.*)  Manos, Inc. is a subtenant of Cascella doing business as

Seaport Restaurant and Lighthouse Lounge .  (Doc. No. 57, "Single Amended Complaint," filed

on September 7, 2005, ¶ 11).  Roland Carlson is also a subtenant of Cascella who owns a retail

shrimp business.  (*Id.* at ¶ 12).

The lease provides that Lessee "shall pay all taxes levied upon the leased premises during

the lease term including ad valorem real or personal property taxes, intangible taxes and

---

[1] Facts in the background section of this Order are drawn in part from the orders of other
courts.  The Court gives a detailed explanation of these orders in order to demonstrate the history
and subject matter of the litigation and to provide a basis for the res judicata discussion that
follows in the analysis section of this Order.  *See, e.g., United States v. Jones*, 29 F.3d 1549,
1553 (11th Cir. 1994) (explaining that "a court may take notice of another court's order only for
the limited purpose of recognizing the 'judicial act' that the order represents or the subject matter
of the litigation") (internal citations omitted).

privilege taxes." (Doc. No. 26-2, Ex. A," Lease Agreement," Lease Covenants and Conditions, filed on January 19, 2005, §1). The lease also provides that "Lessee shall not remove any personal property or fixtures from the leased premises if there is any monetary amount due Lessor from Lessee upon expiration or termination of the Lease. Such property and fixtures shall be security to the lessor for payment of any monies due Lessor." (*Id.* at §16).

On or about October 11, 1996, Raymond Cascella filed suit against the Canaveral Port Authority in the Eighteenth Judicial Circuit, Brevard County, Florida ("state trial court"), alleging that the Port Authority breached Cascella's covenant of quiet enjoyment. (Doc. No. 14, Ex. A, p. 3). Cascella sought damages in excess of $15,000 as a result of the alleged breach of the covenant. (*Id.*) In response, the Port Authority filed a counterclaim against Cascella due to Cascella's failure to install fire walls required by the terms of the lease. (*Id.*) The Port Authority had informed Cascella that the firewalls were required and that a failure to install the fire walls would result in a termination of the lease. (*Id.* at 4-5).

In March 1999, the Port Authority filed an action to evict Cascella and to recover damages for Cascella's failure to pay $80,000 in ad valorem property taxes on the leased premises. *Cascella v. Canaveral Port Authority*, 827 So.2d 308, 309-10 (Fla. 5th DCA 2002). The state trial court found that the lease made payment of ad valorem property taxes part of the rent and that the Port Authority was entitled to summary eviction. *Id.* at 310. Two days later, Cascella filed in the state trial court notice of a Chapter 13 bankruptcy proceeding he had filed. *Id.* On May 5, 1999, Cascella's state court action was then removed to the United States Bankruptcy Court for the Middle District of Florida. (Doc. No. 14, Ex. A, p.3).

During the bankruptcy proceeding, Cascella sought relief for breach of the covenant of

quiet enjoyment and alleged that his due process rights were violated by the Port Authority's termination of the leasehold premises. (*Id.* at 3, 4). The Bankruptcy Court found that the Port Authority provided Cascella due process, that the Port Authority did not violate Cascella's covenant of quiet enjoyment, and that the lease was validly terminated by the Port Authority prior to the bankruptcy petition date. (*Id.* at 5, 6).

In its Motion for Summary Judgment filed in the bankruptcy case, the Port Authority argued that the issues raised in the bankruptcy case were identical to those litigated in *Canaveral Port Auth. v. Dep't of Revenue*, 690 So. 2d 1226 (Fla. 1996). (Doc. No. 1, Ex. F, "September 22, 1999 Bankruptcy Court Memorandum Opinion," filed on December 14, 2004, p. 3). The Bankruptcy Court found that in *Department of Revenue* the issue litigated was whether the Port Authority was immune from ad valorem taxation and that the issue presented to the Bankruptcy Court involved contractual obligations between the Port Authority and Cascella. (*Id.*) The Bankruptcy Court denied the Port Authority's Motion for Summary Judgment, which sought to evict Cascella, and found that a genuine issue of material fact existed as to whether the issues presented in both cases were identical. (*Id.*)

Two years into the Chapter 13 bankruptcy proceeding, Cascella fell behind in making the payments ordered pursuant to his confirmed bankruptcy plan. *Cascella*, 827 So. 2d at 310. The Bankruptcy Court dismissed the case, lifted the automatic stay imposed by 11 U.S.C. Section 362, and enjoined Cascella from filing for relief pursuant to 11 U.S.C. Sections 105(a) and 109(g) for a period of 180 days from the effective date of the Order. (Doc. No. 63, Ex. E, "November 9, 2001 Bankruptcy Court Order Dismissing Case," filed on September 15, 2005).

Upon dismissal of the plan, Cascella converted his case into a Chapter 7 liquidation.

*Cascella*, 827 So. 2d at 310.  The Port Authority then moved for relief from the automatic stay provisions of the bankruptcy code.  *Id.*  On January 11, 2002, the Bankruptcy Court modified the automatic stay to permit the eviction to proceed.  *Id.*  On February 18, 2002, the state trial court conducted a hearing and concluded that eviction was proper because Cascella failed to pay the portion of his rent consisting of ad valorem property taxes.  *Id.*  Cascella appealed that ruling to the Fifth District Court of Appeal which affirmed the eviction order.  *Id.*  Cascella's appeal to the Florida Supreme Court was dismissed.  *Cascella v. Canaveral Port Authority*, 838 So. 2d 558 (Fla. 2002).

Cascella then filed an appeal with the United States District Court for the Middle District of Florida, challenging the jurisdiction of the state trial court and its order of eviction, the Bankruptcy Court's ruling regarding the original removal of the state court action, the Bankruptcy Court's order granting relief from the stay, and the Bankruptcy Court's jurisdiction. (Doc. No. 14, Ex. D, "December 11, 2002 Middle District of Florida Order," p. 3).  The federal trial court rejected Cascella's arguments and denied his request for relief.  (*Id.* at 4-7).

Cascella then filed a writ of mandamus in the United States Court of Appeals for the Eleventh Circuit, asking the appellate court to quash the Fifth District Court of Appeal's decision in *Cascella v. Canaveral Port Authority*, 827 So.2d 308 (5th DCA 2002), and to issue a writ of prohibition to preclude the Port Authority and the state trial courts and appeals courts from assuming jurisdiction.  (Doc. No. 14, Ex. E, "February 7, 2003 Eleventh Circuit Order," p.1). The Eleventh Circuit rejected Cascella's writ.  (*Id.* at 2-3).

After filing the writ of mandamus in the Eleventh Circuit, Cascella filed another appeal to the Eleventh Circuit, arguing that the Bankruptcy Court did not have jurisdiction over the

previously removed state court eviction proceeding.  (Doc. No. 14, Ex. F, "July 3, 2003 Eleventh Circuit Judgment," p. 2).  The Eleventh Circuit rejected Cascella's argument, and the United States Supreme Court denied Cascella's Petition for Certiorari.  (*Id.* at 7); *Cascella v. Canaveral Port Authority*, 540 U.S. 1112 (2004).

Cascella has filed two additional lawsuits in the state trial court against the Port Authority.  In the first case, which Cascella filed on October 22, 2004, Cascella sought to recover damages for breach of contract and tortious interference with a contract based upon the Port Authority's alleged refusal to allow Cascella to assign his rights under the lease.  (Doc. No. 14, Ex. K).

In the second suit, Cascella, Manos, Inc., and Roland Carlson requested that the state trial court vacate the final judgment of eviction it previously had entered which had been affirmed by the Fifth District Court of Appeal.  (Doc. No. 14, Ex. L).  On June 24, 2005, the state trial court granted the Port Authority's Motion to Dismiss with prejudice and also granted the Port Authority's Motion to Strike the complaint of Cascella, Manos, Inc., and Roland Carlson challenging the final judgment of eviction.  (Doc. No. 56, Ex. B, "June 24, 2005 State Trial Court Order of Dismissal with Prejudice," filed on September 6, 2005).

On September 7, 2005, Raymond Cascella, Manos, Inc., and Roland Carlson filed in this Court a Single Amended Complaint against the Canaveral Port District d/b/a Canaveral Port Authority, Commissioners Rodney S. Ketcham, Raymond P. Sharkey, Donald N. Molitor, Ralph J. Kennedy, and Joe D. Matheny, Attorney Harold T. Bistline, and William P. Bancroft.  (Doc. No. 57).  The Single Amended Complaint contains four counts which include claims for violations of 42 U.S.C. Section 1983, replevin, ejectment, and conversion.  (Doc. No. 57).

On September 15, 2005, Defendants filed a Motion for Summary Judgment raising the following arguments: 1) Plaintiffs' Section 1983 allegations fail to state a claim, are otherwise unsupported by record evidence, and are barred by the doctrines of qualified and legislative immunity; 2) Plaintiffs' claims for replevin, ejectment, and conversion fail to meet notice requirements under Florida Statutes, Section 768.28(6); 3) Plaintiffs are unable to state a claim for relief for replevin, ejectment, and conversion; 4) Plaintiffs have no legal right to their personal property so their claims for replevin, ejectment, and conversion must fail; and 5) res judicata bars the relitigation of this suit.  In support of their Motion for Summary Judgment, Defendants included the affidavits of Harold Bistline, Donald Molitor, Ralph Kennedy, Rodney Ketcham, Joe Matheny, Raymond Sharkey, and William Bancroft and the depositions of Roland Carlson and Raymond Cascella.

The affidavits of Rodney Ketcham, Raymond Sharkey, Donald Molitor, Ralph Kennedy, and Joe Matheny, which were filed on September 15, 2005, were not signed.  On September 21, 2005, Defendants refiled the affidavits of Rodney Ketcham, Raymond Sharkey, Donald Molitor, Ralph Kennedy, and Joe Matheny which were signed and made under oath.  (Doc. Nos. 72, 74, 75, 76, 77).

William Bancroft testified that he was employed by the Port Authority from May 1990 through December 2003 and served as the Deputy Executive Director and Director of Tenant Relations.  (Doc. No. 63, Ex. A, "Affidavit of William Bancroft," ¶ 2).  Bancroft testified that he informed Cascella that his leasehold did not comply with applicable fire code regulations.  (*Id.* at ¶ 5).  Because of Cascella's refusal to cure the violation, Bancroft recommended to the Board of Commissioners that Cascella's lease be terminated.  (*Id.* at ¶ 6).  When Cascella refused to pay

ad valorem property taxes, Bancroft also recommended terminating the lease.  (*Id.* at ¶ 7).

Harold Bistline testified that he represented the Port Authority in its suit to evict Raymond Cascella for failure to pay ad valorem taxes as required by the terms of the lease and assisted the Port Authority in the bankruptcy proceedings against Cascella.  (Doc. No. 68, "Affidavit of Harold Bistline," ¶¶ 3, 4).  Bistline testified that he did not violate any constitutional right of Cascella, Manos, Inc., or Roland Carlson, that he never took, seized, or retained any property of Cascella, Manos, Inc., or Roland Carlson, and that he is not in possession or control of any property of Cascella, Manos, Inc., or Roland Carlson.  (*Id.* at ¶¶ 6,7,8).

Commissioners Donald Molitor, Ralph Kennedy, Rodney Ketcham, Joe Matheny, and Raymond Sharkey testified that they voted to terminate Cascella's lease because Cascella failed to pay ad valorem taxes on the property despite being given notice of the requirement under the lease to do so.  (Doc. No. 72, "Donald Molitor Affidavit," ¶ 7); (Doc. No. 74, "Ralph Kennedy Affidavit," ¶ 7); (Doc. No. 75, "Rodney Ketcham Affidavit," ¶ 7); (Doc. No. 76, "Joe Matheny Affidavit," ¶ 4); (Doc. No. 77, "Raymond Sharkey Affidavit," ¶ 7).  The commissioners further testified that they never voted, authorized, or instructed anyone to unlawfully take, seize, or retain any property of Cascella, Manos, Inc., or Carlson, that they never took, seized or retained any property of Cascella, Manos, Inc., or Carlson, that they were not in possession or control of the property of Cascella, Manos, Inc., or Carlson, and that they never voted, authorized, or instructed anyone to violate any constitutional right or clearly established right of Cascella, Manos, Inc., or Carlson.  (Doc. No. 72, ¶¶ 8, 9, 10, 11); (Doc. No. 75, ¶¶ 8, 9, 10, 11); (Doc. No. 76, ¶¶ 6, 7, 8, 9); (Doc. No. 77, ¶¶ 8, 9, 10, 11).

Plaintiff Roland Carlson testified that the complaint is a "load of baloney" because "there's a lot of stuff in there that shouldn't even be in there."  (Doc. No. 64, "Roland Carlson Deposition," p. 4).  Carlson stated that a "combination" of the commissioners violated his constitutional rights.  (*Id.* at 4-5).  When asked whether he knew what Ketcham had done to violate his constitutional rights, Carlson responded that he did not know and would have to review the paperwork.  (*Id.*).

Regarding the allegations of constitutional deprivations, Carlson stated that the Port Authority violated his constitutional rights because he is "getting older" and "had been established" by "cooperating" with Cascella.  (*Id.* at 9).  Carlson averred that Cascella "helped me when I was down to stay on the property to start selling shrimp."  (*Id.*)  Carlson further testified that the fire code case and tax case constitute the evidence of the constitutional violations.  (*Id.* at 26).  Carlson stated that his due process rights were violated because he was deprived of his motor home even though he was given several weeks to remove his belongings from the property.  (*Id.* at 13).  Carlson further testified that fishnets, metal, and trailer parts were left on the property.  (*Id.* at 18).  Finally, Carlson stated that the commissioners violated his due process rights by referring the issue of the sale of Cascella's lease to their staff for review rather than ruling on the issue immediately.  (*Id.* at 31).

Plaintiff Raymond Cascella also offered testimony in this case.  When asked how Ketcham, Sharkey, Molitor, and Kennedy violated his constitutional rights, Cascella responded that the "complaint speaks for itself" and that "[i]t's all the same complaint.  Asked and answered."  (Doc. No. 65, "Raymond Cascella Deposition," pp. 5, 11, 13, 14).  Cascella testified that Bistline violated his constitutional rights by going into "Brevard County Court in a cause of

action that was removed to Federal Court and relitigated it while it was under [the] jurisdiction of [the] Federal Bankruptcy Court." (*Id.* at 14). When asked how Bancroft and the Port Authority violated his constitutional rights, Cascella testified that "[d]iscovery's ongoing" and that "[i]t's all referenced in the complaint." (*Id.* at 15, 16). Defendants' counsel also questioned Cascella as to how the Defendant commissioners violated his equal protection rights. (*Id.* at 17). Cascella replied: "You're an attorney. Read the complaint." (*Id.*) Defendants' counsel further pressed Cascella for evidence to support his allegation that the Port Authority had an official custom of violating the Constitution. (*Id.* at 19-20). Cascella responded: "Proof is in the pudding." (*Id.* at 20). Cascella also testified that he owned the building that was on the property, that the building was confiscated by Defendants, and that the building was bolted to a cement slab. (*Id.* at 43, 53, 56).

On September 22, 2005, Defendants filed a Request for Judicial Notice, asking the Court to take judicial notice of documents filed in and orders issued by state and federal courts regarding Plaintiffs' related litigation. (Doc. No. 79). On October 12, 2005, Plaintiffs also filed a Request for Judicial Notice. (Doc. No. 84).

On October 18, 2005, Plaintiffs filed their Response to Defendants Motion for Summary Judgment. (Doc. No. 86, filed on October 18, 2005). Plaintiffs also filed a Motion to Strike the unsworn, unsigned affidavits of Donald Molitor, Ralph Kennedy, Joe Matheny, Rodney Ketcham, and Raymond Sharkey that Defendants included in support of their Motion for Summary Judgment and urged the Court not to consider the refiled affidavits on the grounds that these affidavits were not timely filed. (*Id.*)

On October 19, 2005, Defendants filed a response to Plaintiffs' Request to Take Judicial

-12-

Notice and argued that the Court should not take judicial notice of certain documents because Plaintiffs have not identified a specific document or fact for judicial notice.  (Doc. No. 87, filed on October 19, 2005).

This Order analyzes the Request of Plaintiffs and Defendants for Judicial Notice, Plaintiffs' Motion to Strike, and Defendants' Motion for Summary Judgment.

## Request for Judicial Notice

Plaintiffs and Defendants request the Court to take judicial notice of different orders and cases relating to the litigation in this case.  Judicial notice occurs when "a judge recognizes the truth of certain facts, which from their nature are not properly the subject of testimony, or are universally regarded as established by common knowledge." *Meredith v. Beech Aircraft Corp.*, 18 F.3d 890, 895 (10th Cir. 1994).  The recognition of such facts by the Court is proper because these facts are not subject to reasonable dispute.  *Id.*

Federal Rule of Evidence 201 governs the use of judicial notice.  Rule 201 states that a judicially noticed fact "must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." FED. R. EVID. 201(b).

In *United States v. Jones*, 29 F.3d 1549, 1553 (11th Cir. 1994), the Eleventh Circuit explained that in order for a fact to be judicially noticed under Federal Rule of Evidence 201(b), indisputability is required.  Because the effect of taking judicial notice is to preclude a party from introducing contrary evidence as to the fact noticed, the fact must be "one that only an unreasonable person would insist on disputing." *Id.* (internal citation omitted).  Furthermore,

-13-

the appellate court explained that the doctrine of collateral estoppel would be rendered

superfluous if it were permissible for a court to take judicial notice of a fact merely because it

was found true in another case.  *Id.*  (internal citation omitted).  Therefore, the Eleventh Circuit

found that a court may take judicial notice of the order of another court only for the limited

purpose of recognizing the "judicial act" that the order represents or the subject matter of the

litigation.  *Id.*  (internal citations omitted).

     In the instant case, the Court will take judicial notice of the orders of other courts for the

purpose of recognizing the judicial act represented by the order and the subject matter of the

litigation.  The Court will determine whether these orders preclude the relitigation of issues

raised in this case when addressing Defendants' res judicata arguments.

     Defendants argue that the Court should not take judicial notice of item 1 and items 4-6 in

Plaintiffs' Request for Judicial Notice on the grounds that Plaintiffs have failed to specifically

identify a document or fact of which they request the Court to take judicial notice.[2]  Of these

items, only item 4 is not part of the record, and the Court will not take judicial notice of an item

not supplied by Plaintiffs.  *See* FED. R. EVID. 201(d) ("A court shall take judicial notice if

requested by a party and supplied with the necessary information.").  While the other items are

broad in nature, Plaintiffs have submitted specific cases related to each of these requests.  To the

---

   [2] Item 1 is a request that the Court take judicial notice of State of Florida Department of
Business and Professional Regulation D.O.A.H. Case Number 04-97-021.  (Doc. No. 84).  Item 4
is a request that the Court take judicial notice of the transcript of State of Florida Case Number
05-1999-CA-09682.  (*Id.*)  Item 5 is a request that the Court take judicial notice of United States
Court of Appeals for the Eleventh Circuit Case Number 02-16550-D.  (*Id.*)  Item 6 is a request
that the Court take judicial notice of Federal Maritime Commission Lawsuit against the Port
Authority, Docket Number 02-02.  (*Id.*)

extent that Plaintiffs have supplied the necessary cases for the Court's consideration, these cases will be considered in analyzing the issues raised by the parties.

## Motion to Strike

Plaintiffs argue that the Court should strike the affidavits of Donald Molitor, Ralph Kennedy, Rodney Ketcham, Joe Matheny, and Raymond Sharkey.  Plaintiffs point out that the affidavits were initially unsworn and unsigned and were later refiled by Defendants with the appropriate attestations after the September 15, 2005 dispositive motion deadline.  Defendants' argument in response to Plaintiffs' Motion to Strike is that a manifest injustice would result if the Court does not consider the affidavits.

Consideration of the arguments raised by the parties requires the Court to examine the litigation history in the instant case.  On August 31, 2005, the Court issued an Order striking the Amended Complaint of Plaintiffs Carlson and Manos, Inc. and dismissing Counts I-IV of Plaintiff Cascella's Amended Complaint.  (Doc. No. 53, p. 18).  The Court also gave Cascella, Manos, Inc., and Carlson, inter alia, leave to file a Single Amended Complaint within 10 days of the date of the Order and explained that on the failure of Manos, Inc., Carlson, and Cascella to jointly file a Single Amended Complaint as ordered, the Amended Complaint of Cascella and Manos, Inc. at Docket Number 20 would stand as the complaint in the case.  (*Id.* at 19).  Thus, on August 31, 2005, Defendants did not know the nature of the operative pleading while the dispositive motion deadline was set for September 15, 2005 by the Case Management and Scheduling Order. (Doc. No. 45).

On September 15, 2005, Defendants filed a Motion for Extension of Time to File a Dispositive Summary Judgment Motion and Memorandum in Support.  (Doc. No. 61).  Because

Plaintiffs filed a Single Amended Complaint on September 7, 2005, Defendants' counsel explained that they had six business days to prepare a motion for summary judgment and accompanying memorandum of law as well as to prepare and sign all the necessary affidavits. (*Id.* at 1). Defendants' counsel represented that she was unable to prepare all of the necessary documents under the current time frame and that an extension of time was necessary to prevent a manifest injustice. (*Id.* at 2). In accordance with the Court's Case Management and Scheduling Order stating that filing a motion for extension of time does not toll the time for compliance with the Court's deadlines, Defendants submitted their Motion for Summary Judgment and unsigned affidavits on September 15, 2005.

As a result of the short period of time in which Defendants had to prepare their Motion for Summary Judgment and accompanying affidavits, Defendants have shown good cause for the untimely filings and have demonstrated that a manifest injustice would result if the Court refused to consider the subsequently filed, sworn, and signed affidavits. The information in the affidavits was provided to Plaintiffs in accordance with the deadline, and the act of refiling such documents with signatures under oath did not change their substantive contents. Furthermore, Plaintiffs have not shown that any type of prejudice would result from the Court's consideration of the affidavits. The refiling of the affidavits on September 21, 2005, was merely a ministerial function. A refusal to consider the refiled affidavits would be based on a procedural technicality that would be inappropriate to apply given the time constraints faced by Defendants. Therefore, the Court denies Plaintiffs' Motion to Strike the affidavits of Donald Molitor, Ralph Kennedy, Rodney Ketcham, Joe Matheny, and Raymond Sharkey. The Court also denies Defendants' Motion for Extension of Time to File Dispositive Summary Judgment Motion as moot. (Doc.

No. 61).

## Motion for Summary Judgment

### Standard of Review

Summary judgment is authorized "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *accord Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is appropriate only in circumstances where "the evidence is such that a reasonable jury could [not] return a verdict for the nonmoving party." *Id.* The moving party bears the burden of proving that no genuine issue of material fact exists. *Celotex v. Catrett*, 477 U.S. 317, 323 (1986).

In determining whether the moving party has satisfied its burden of proof, the Court considers all inferences drawn from the underlying facts in the light most favorable to the party opposing the motion and resolves all reasonable doubts against the moving party. *Anderson*, 477 U.S. at 255. The Court may not weigh conflicting evidence or weigh the credibility of the parties. *See Hairston v. Gainesville Sun Pub. Co.*, 9 F.3d 913, 919 (11th Cir. 1993) (citation omitted). If a reasonable fact finder could draw more than one inference from the facts, and that inference creates an issue of material fact, then the Court must not grant summary judgment. *Id.* (citation omitted).

### Analysis

#### *1. Defendants' Argument that Res Judicata Precludes the Relitigation of this Suit*

Defendants seek to apply the doctrine of res judicata to this case based on orders issued

by other courts.  There are a number of issues raised by the Single Amended Complaint to which

res judicata may be applicable.  These issues include Plaintiffs' allegations that Defendants

violated federal law by not obtaining a remand after Defendants' Motion for Summary Judgment

in Federal Bankruptcy Court was denied, that Defendants illegally obtained a writ of eviction,

that Defendants unreasonably seized their property in violation of the Fourth and Fourteenth

Amendments to the Constitution, that Plaintiffs are entitled to possession of the property and

damages for Defendants' alleged conversion of such property, and that the Defendant

commissioners violated the Equal Protection Clause based on the removal of the case.

An examination of the res judicata argument requires the Court to examine the decision

of the Fifth District Court of Appeal as the starting point for the analysis.  The Fifth District

Court of Appeal affirmed the state trial court's finding that the lease made the payment of the ad

valorem property taxes part of the rent which meant that the Port Authority was entitled to

possession of the property and summary eviction.  In the instant case, this same issue ultimately

underlies Plaintiffs' ejectment cause of action in Count III of the Single Amended Complaint in

which Plaintiffs claim that the Port Authority is wrongfully in possession of the real property.

This issue also underlies Plaintiffs' allegations that an illegal writ of eviction was obtained

which is asserted in Count I of the Single Amended Complaint.

The doctrine of collateral estoppel rather than res judicata applies to bar the relitigation

of the ejectment claim and the illegal writ of eviction allegation.  Res judicata treats a judgment

as the full measure of relief to be accorded between the same parties on the same claim or cause

of action.  *See Kasper Wire Works, Inc. v. Leco Eng'g & Mach., Inc.*, 575 F.2d 530, 535 (5th Cir.

1978) (internal citations omitted).  When a plaintiff obtains a judgment, his claim merges into the

judgment, and the plaintiff may not seek further relief on the claim.  *Id.*  Res judicata is intended

to avoid multiple law suits on identical obligations between the same parties.  *Id.*  Under the

rules of res judicata or claim preclusion, the "effect of a judgment extends to the litigation of all

issues relevant to the same claim between the same parties, whether or not raised at trial."  *Id.*

(internal citations omitted).

On the other hand, collateral estoppel or issue preclusion recognizes that suits addressed

to particular claims may present issues relevant to suits on other claims.  *Id.*  Issue preclusion

bars the relitigation of issues actually adjudicated in order to minimize the costly effects of

redundant litigation.  *Id.* at 535-36 (internal citations omitted).  In order for issue preclusion to

apply in a later case, the contested issues must have been litigated and necessary to the judgment

in the earlier case.  *Id.* at 536.

Because Defendants seek to prevent the relitigation of the issue of the rightful possession

of the real property, the doctrine of collateral estoppel applies.

In determining whether to give preclusive effect to a state court judgment, the Court must

apply the state law of Florida on collateral estoppel.  *Vazquez v. Metro. Dade County*, 968 F.2d

1101, 1106 (11th Cir. 1992) ("federal courts considering whether to give preclusive effect to

state court judgments must apply the State's law of collateral estoppel.") (internal citation

omitted).  Under Florida law, the essential elements of collateral estoppel "are that the parties

and issues be identical, and that the particular matter be fully litigated and determined in a

contest which results in a final decision of a court of competent jurisdiction."  *Dep't of Health &*

*Rehab. Servs. v. B.J.M.*, 656 So. 2d 906, 910 (Fla. 1995) (internal citation omitted).

The decision of the Fifth District Court of Appeal meets these requirements.  The issue

actually litigated and necessarily decided in the first proceeding was whether the payment of the

ad valorem property taxes was part of the rent and whether the failure to pay the taxes meant that

the Port Authority was entitled to possession of the property and summary eviction.  This

identical issue underlies Plaintiffs' ejectment claim and allegation that Defendants illegally

obtained a writ of eviction in the instant case.  Cascella was the same party in the earlier suit, and

Manos, Inc. and Carlson are in privity with Cascella as subtenants under Cascella's lease.  *See,*

*e.g., Thal v. S.G.D. Corp.*, 625 So. 2d 852, 853 (Fla. 3d DCA 1993) ("[i]t is a well-settled

principle of landlord-tenant law that a sublease rises and falls with the master lease, and that a

sublessee can take no greater rights in the demised property than its sublessors.") (internal

citations omitted).  Because the elements of collateral estoppel have been met, summary

judgment is appropriate on Count III of the Single Amended Complaint, and summary judgment

is also appropriate on Plaintiffs' allegation that Defendants illegally obtain a writ of eviction.

Neither collateral estoppel nor res judicata apply to (1) Plaintiffs' allegations that

Defendants violated 42 U.S.C. Section 1983 by failing to obtain a remand to state court after the

Bankruptcy Court denied Defendants' Motion for Summary Judgment and (2) Plaintiffs'

allegations that Defendants illegally seized Plaintiffs' personal property in violation of the

Fourth and Fourteenth Amendments, thus entitling Plaintiffs to immediate possession of their

personal property and damages for conversion.  Plaintiffs' allegation that Defendants violated

federal law by failing to obtain a remand was not part of the same claim or cause of action that

gave rise to the initial eviction proceeding.  The initial eviction proceeding was based on

whether the payment of ad valorem property taxes was part of the rent and did not concern the

procedural remand issue now raised.  Furthermore, Plaintiffs' claim that Defendants illegally

seized their personal property would not have ripened until after the eviction had taken place.

Defendants argue that the Bankruptcy Court's opinion reflects no question that Cascella was afforded due process with respect to the termination of his lease and subsequent eviction. Because the Bankruptcy Court found that the Port Authority provided due process to Cascella, Defendants argue that Plaintiffs' claim that an illegal seizure of property occurred in violation of the Fourth and Fourteenth Amendments is without merit.

While the Bankruptcy Court found that Cascella was afforded due process, this finding was based on Defendants' actions regarding the fire wall separations. (Doc. No. 14, Ex. A, pp. 6-7). The Bankruptcy Court did not address Defendants' conduct as it related to the eviction and the seizure of Plaintiffs' personal property. (*See id.*) Because the replevin, seizure, and conversion claims would not have ripened until after the eviction process occurred, the earlier litigation would not have addressed these issues. Thus, Defendants' argument that the Bankruptcy Court's opinion demonstrates that res judicata bars the relitigation of the Fourth and Fourteenth Amendment seizure issues in this case is without merit.

While res judicata and collateral estoppel do not bar the relitigation of all of the issues raised in the instant case, there is an absence of a genuine issue of material fact on the Fourth and Fourteenth Amendment seizure claims based on the record before the Court. The Fifth District Court of Appeal, which affirmed the trial court's finding that the lease made payment of ad valorem property taxes part of the rent, found that Defendants were owed $80,000 in ad valorem property taxes. *Cascella v. Canaveral Port Authority*, 827 So.2d 308, 309-10 (Fla. 5th DCA 2002). Under the terms of the lease, Defendants could hold Plaintiffs' personal property if there was any monetary amount due. (*See* Doc. No. 26-2, "Lease Agreement," Lease Covenants and

Conditions, § 16).   Because the Fifth District Court of Appeal found that Defendants were owed $80,000 in ad valorem property taxes which was part of the rent and because the lease permitted Defendants to hold Plaintiffs' personal property as security, summary judgment in favor of Defendants is appropriate on the Fourth and Fourteenth Amendment seizure claims.

### 2. Defendants' Argument that Plaintiffs' Allegations Fail to State a Claim and are Unsupported by Record Evidence

Defendants argue that the depositions of Cascella and Carlson demonstrate that Plaintiffs refused or were unable to clarify the exact nature of their claims and did not provide any evidence that an alleged constitutional deprivation occurred.

Cascella was unable to identify any act that Ketcham, Sharkey, Molitor, Kennedy, Matheny, Bancroft, and the Port Authority committed that constitutes a violation of the Constitution.  (*See* Doc. No. 65, pp. 4-15).  Carlson was also unable to identify any actionable conduct in which Ketcham individually engaged that violated Carlson's constitutional rights. (*See* Doc. No. 64, p. 5).  Carlson admitted that his amended complaint was a "load of baloney" and that he was "taking the word of somebody else" as a basis for the allegations.  (*Id.* at 4, 37).

While Carlson was unable to identify any conduct that any Defendant individually committed that violated the Constitution, Carlson testified that the Port Authority violated his due process rights by refusing to accept his proposal to allow Cascella to assign his lease to a third party and by referring the matter to the Port Authority's staff for review, by planting trees in front of a sign at the Sea Port restaurant on the property, and by attempting to terminate Cascella's lease based upon a fire code violation.  (Doc. No. 64, pp. 31, 32, 33, 34, 35).

While Defendants claim that Carlson lacks standing to bring these claims on his own behalf because he cannot demonstrate an injury-in-fact, even if Cascella or Manos, Inc. raised

these claims in their own right, such claims are without merit.  Plaintiffs had ample opportunity to raise these issues regarding the assignment of the lease and the trees before the Bankruptcy Court and state trial court but chose not to pursue these claims.  In fact, Plaintiffs argued to the Bankruptcy Court that the Port Authority violated their due process rights, and nothing prevented Plaintiffs from raising these additional constitutional claims at an earlier stage in the litigation.  Plaintiffs cannot now take "a second bite at the apple" and pursue constitutional claims against the same party or its privies that arise out of the same set of operative facts as claims pursued earlier.  An examination of these arguments would violate the doctrine of res judicata.[3]  Even if the Court were to overlook the doctrine of res judicata, Plaintiffs have not proffered a case to the Court, nor has the Court's independent research produced a case, which demonstrates that planting trees in front of a restaurant sign or not immediately allowing a lease to be assigned when the lessee is in violation of the lease terms for failure to pay $80,000 in ad valorem property taxes violates the Constitution.[4]

Finally, Defendants argue that failing to obtain a remand from the Bankruptcy Court to the state court is not legally actionable under 42 U.S.C. Section 1983.

_____

[3] Put another way, if the Court were to review these new alleged constitutional claims, the doctrine against splitting a cause of action would be violated.  *See, e.g., Hayes v. Solomon*, 597 F.2d 958, 984 (5th Cir. 1979).  The doctrine against splitting a cause of action is not distinct from the res judicata doctrine.  *See id.*  Rather, these two doctrines are "two sides of the same coin."  *See Friez v. First Am. Bank & Trust of Minot*, 324 F.3d 580, 581 (8th Cir. 2003) ("Res judicata prevents the splitting of a single cause of action and the use of several theories of recovery as the basis for separate lawsuits.") (internal citation omitted); *see also Shaver v. F.W. Woolworth Co.*, 840 F.2d 1361, 1365 (7th Cir. 1988) (explaining that res judicata "prevents the splitting of a single cause of action and the use of several theories of recovery as the basis for separate suits.") (internal citation omitted).

[4] Carlson testified that the trees were subsequently taken down.  (Doc. No. 64, p. 8).

Plaintiffs allege that Defendants' actions violate 28 U.S.C. Sections 1446(d), 1447, and 1452 because Defendants failed to obtain a remand from the Bankruptcy Court to the state trial court.  Sections 1446(d), 1447, and 1452 are part of Title XXVIII, Chapter 89 of the United States Code.  Chapter 89 of Title XXVIII governs the removal of cases from state court to federal court.  28 U.S.C. Section 1441(a) provides that any civil action brought in state court over which the district courts have original jurisdiction may be removed by the defendant to the district court of the United States for the district and division embracing the place where the action is pending.  28 U.S.C. § 1441(a).  28 U.S.C. Section 1446 explains the procedure for removal.  Sub-section (d) provides that after the defendant files a notice of removal of a civil action, the defendant shall give written notice of the removal to all adverse parties and shall file a copy of the notice with the clerk of the state court.  28 U.S.C. § 1446(d).  Section 1452 governs the removal of claims related to bankruptcy cases and provides that a party "may remove any claim or cause of action in a civil action other than a proceeding before the United States Tax Court or a civil action by a governmental unit to enforce the governmental unit's police or regulatory power, to the district court."  28 U.S.C. § 1452(a).

Chapter 89 of Title XXVIII permits the remand of a case from federal court to state court if the case was removed to federal court and if removal should not be permitted.  *See* 28 U.S.C. § 1446(4)(c).  The Port Authority removed Cascella's claim regarding the breach of the covenant of quiet enjoyment and related adversarial proceedings from the state trial court to the Federal Bankruptcy Court after Cascella filed a voluntary petition for Chapter 13 bankruptcy relief.  (Doc. No. 14, Ex. A, p. 3); *see Cascella v. Canaveral Port Auth.*, 827 So. 2d 308, 309-10 (Fla.

-24-

5th DCA 2002).  The record reflects that Cascella fell behind in making payments under the bankruptcy plan and that the Bankruptcy Court dismissed the case and lifted the automatic stay imposed by 11 U.S.C. Section 362.  (Doc. No. 63, Ex. E).  While Cascella subsequently pursued relief under Chapter 7 of the Bankruptcy Code, the Bankruptcy Court modified the Chapter 7 automatic stay to permit the eviction to proceed.  *Cascella*, 827 So. 2d at 310.  Because the case that was initially removed to the Federal Bankruptcy Court was dismissed due to Cascella's failure to make payments under the bankruptcy plan, a remand of the dismissed case could not have been obtained.  Therefore, Plaintiffs' argument that a remand was a necessary prerequisite to litigating this case in state court is without merit.

Furthermore, Plaintiffs have not cited a case, and the Court's independent research has not located one, demonstrating that a violation of 28 U.S.C. Sections 1446, 1447, or 1452 gives rise to an individual cause of action under 42 U.S.C. Section 1983.  Thus, Plaintiffs cannot demonstrate a violation which is a necessary predicate to receiving relief under Section 1983.[5]

Because there is an absence of any evidence in the record demonstrating a genuine issue of material fact on Plaintiffs' allegations that Defendants illegally obtained a writ of eviction, that Defendants violated federal law by failing to obtain a remand to the state trial court after the Bankruptcy Court denied their Motion for Summary Judgment, that Defendants illegally seized Plaintiffs' personal property in violation of the Fourth and Fourteenth Amendments to the Constitution, and that Defendants violated the Equal Protection Clause to the Constitution, the Court grants Defendants' Motion for Summary Judgment as to Count I of the Single Amended

---

[5] Since the Court has not found a violation and Plaintiffs have not shown one, the Court will not examine Defendants' arguments regarding absolute and qualified immunity.

Complaint.

### 3. Defendants' Argument that Plaintiffs are Unable to State a Claim for Relief Regarding Plaintiffs' Claims for Replevin, Ejectment, and Conversion

### a. Defendants' Argument that Plaintiffs have not Met the Notice Requirements of Florida Statutes, Section 768.28(6)

Defendants argue that Plaintiffs have failed to meet the requirements of Florida Statutes, Section 768.28, in seeking relief for their claims of replevin, ejectment, and conversion.  Section 768.28(6)(a) states:

> An action may not be instituted on a claim against the state or one of its agencies or subdivisions unless the claimant presents the claim in writing to the appropriate agency, and also,...presents such claim in writing to the Department of Financial Services, within 3 years after such claim accrues and the Department of Financial Services or the appropriate agency denies the claim in writing.

FLA. STAT. § 768.28(6)(a) (2005).

Plaintiffs counter that Exhibit K, submitted by Plaintiffs in response to Defendants' Motion for Summary Judgment, demonstrates that proper notice was given.  (*See* Doc. No. 86, Ex. K).  Plaintiffs contend that Exhibit K is several demands for payment based on Defendants' alleged violations of state and federal law.  One of the alleged demands stipulated that it was submitted as a condition precedent to the filing of a complaint in court.  (Doc. No. 86, Ex. K, "Raymond Cascella Demand," p. 1).

The only authenticated document in Exhibit K is titled "Certification Service of Process" which contains a date of September 11, 2003.  The Certification is from Roland Carlson to Defendants.  Attached to the Certification is a five page demand, dated September 8, 2003,

which contains several causes of action under federal and state law.[6]  The other alleged demand

documents are not authenticated and cannot be considered by the Court on summary judgment.

*See, e.g., Woods v. City of Chicago*, 234 F.3d 979, 988 (7th Cir. 2000) (explaining that at the

summary judgment stage the court "may consider any material that would be admissible or

usable at trial, including properly authenticated and admissible documents or exhibits") (internal

citations and quotations omitted).

Because nearly all of the alleged demands are unauthenticated, and even if authenticated

are not addressed to the Department of Financial Services,[7] Plaintiffs' argument that they

complied with Section 768.28(6) is without merit.  However, even if Plaintiffs had demonstrated

that they complied with the notice requirements of Section 768.28(6), summary judgment in

favor of Defendants is appropriate on the replevin, ejectment, and conversion claims because

Plaintiffs have no legally cognizable interest in the claimed property pursuant to the terms of the

lease which is further discussed in Section 4 of this Order.

### b. Defendants' Argument that Plaintiffs are Unable to State a Claim for Relief for Replevin

Defendants argue that an action for replevin is appropriate with respect to personal rather

than real property, that Plaintiffs are seeking to recover fixtures in their replevin claim, and that

fixtures are unrecoverable under Florida replevin law.

_____

[6] In the demand, Carlson alleges that he has a right to redress in the courts for
Defendants' alleged violations of 42 U.S.C. Section 1983, the First, Fifth, and Fourteenth
Amendments to the Constitution, and Florida Statutes Sections 772.11, 784.03, and 812.012.
(Doc. No. 86, Ex. K, "Roland Carlson Demand," ¶¶ 1, 4, 6, 7).

[7] The purported unauthenticated demand of Cascella is addressed to the Department of
Insurance which is also known as the Department of Financial Services in Florida.  Carlson's
authenticated demand is only addressed to the Port Authority and its commissioners and is not
addressed to the Department of Insurance or the Department of Financial Services.

Replevin involves the recovery of personalty. *Williams Mgmt. Enter., Inc. v. Buonauro*, 489 So. 2d 160, 162 (Fla. 5th DCA 1986). An action for replevin lies only for specific property that is capable of identification and separation. *Id.* at 163. (internal citation omitted). A replevin action is not available to recover real property or fixtures that have become attached to the property. *Richbourg v. Rose*, 44 So. 69, 74 (Fla. 1907) (internal citation omitted); *see General Elec. Co. v. Atl. Shores, Inc.*, 436 So. 2d 974, 975 (Fla. 5th DCA 1983).

The term fixture is used to refer to a piece of property that was originally personal chattel and which has been actually or constructively affixed to the soil or some structure legally a part of the soil. *Greenwald v. Graham*, 130 So. 608, 610 (Fla. 1930). Determining whether a piece of property incorporated into a building, structure, or soil retains its character as a chattel or constitutes a fixture requires an examination of the facts of each case. *Cmty. Bank of Homestead v. Barnett Bank of the Keys*, 518 So. 2d 928, 930 (Fla. 3d DCA 1987) (internal citations omitted).

Three tests are commonly used in analyzing whether property is to be considered a fixture or not. *Greenwald* 130 So. at 610; *Cmty. Bank of Homestead*, 518 So. 2d at 930. The first test examines annexation to the realty. *Greenwald*, 130 So. at 610. The second test focuses on the "adaptation or application to the use or purpose to which that part of the realty to which it is connected is appropriated." *Id.* The third test examines the intention of the party to make the piece of property a permanent part of the freehold. *Id.*

Carlson testified that the property left behind on the leasehold included fishnets, metal, a motor home, and trailer parts. (Doc. No. 64, p. 18). Cascella testified that Defendants confiscated his building which was bolted to a cement slab. (Doc. No. 65, pp. 53, 56).

-28-

Applying these principles to the facts of the instant case, it is clear that the building is not personal property because it is attached to the realty.  Regarding the remainder of the property left on the leasehold, it cannot be said that these pieces of property have been annexed to the leasehold or have become a permanent part of the leasehold.  Because the fishnets, metal, motor home, and trailer parts are capable of identification and separation and have not been incorporated into the realty, the Court finds that Defendants' argument that Plaintiffs are unable to state a claim for relief for replevin regarding these items is without merit.

While Plaintiffs may state a claim for relief for replevin for the fishnets, metal, motor home, and trailer parts, summary judgment in favor of Defendants is appropriate on the replevin claim because Plaintiffs have no legal interest in the property based on the terms of the lease as discussed in Section 4 of this Order.

### c. Defendants' Argument that Plaintiffs' are Unable to State a Claim for Relief for Ejectment

Defendants argue that a plaintiff seeking ejectment must show title in himself and that Plaintiffs in the instant case have no legal title in the leasehold and therefore cannot maintain an action for ejectment as a matter of law.

In an ejectment action, a plaintiff must "recover upon the strength of his own title and must show title in himself and a right to the possession of the land sued for in the proceedings." *Kahn Del. Sec. Corp.*, 153 So. 308, 310 (Fla. 1934) (internal citations omitted).  The Court has previously found that Plaintiffs cannot legally possess the real property based on the findings of the Fifth District Court of Appeal and the application of the collateral estoppel doctrine. Because Plaintiffs have no legal interest in the real property, summary judgment in favor of Defendants is appropriate on Plaintiffs' ejectment claim.

-29-

#### d. Defendants' Argument that Plaintiffs' are unable to State a Claim for Relief for Conversion

Defendants argue that Plaintiffs' conversion claim is insufficient because Plaintiffs seek to recover property that is unrecoverable under Florida conversion law.

Conversion is the taking of personal property from the possession of another without legal justification. *Wilson Cypress Co. v. Logan*, 162 So. 489, 490 (Fla. 1935). Plaintiffs' conversion claim is an action for damages for the loss of leasehold, loss of income for Manos, Inc., loss of Cascella's rental income, loss of Carlson's shrimp retail business, and damages for Cascella's metal building and acreage, restaurant, lounge, and retail shrimp business.

Cascella's metal building is not recoverable under Florida conversion law because it is not personal property and has been attached to the realty. *See id.* The restaurant and lounge would also be unrecoverable under this same reasoning. *See id.* Furthermore, the "acreage" is not recoverable because real estate is not subject to conversion. *Am. Intern. Land Corp. v. Hanna*, 323 So.2d 567, 569 (Fla. 1975).

However, an action for conversion may be brought for "wrongful taking over intangible interests in a business venture" including the goodwill of a business. *In re Corbin's Estate*, 391 So. 2d 731, 733 (Fla. 3d DCA 1980). Thus, Plaintiffs would be able to recover for any wrongful taking of their intangible business interests and any loss of good will towards the business. *See id.*

Regarding the lease, Florida law recognizes that an interest in a lease is an interest in real property rather than personal property. *See De Vore v. Lee*, 30 So.2d 924, 925-26 (Fla. 1947) ("A lease has been defined as a conveyance by the owner of an estate to another of a portion of his interest therein for a term less than his own, and it passes a present interest in the land for the

period specified") (internal citation and quotations omitted).  A plaintiff does not have a claim for conversion of real property.  *See Quitman Naval Stores Co. v. Conway*, 58 So. 840 (Fla. 1912); *see also Am. Intern. Land Corp.*, 323 So.2d at 569.  Because a lease is an interest in real property rather than personal property, it is unlikely that a party's interest in a lease is recoverable under Florida conversion law.

Because some of the items sought by Plaintiffs could be considered personalty and would be recoverable under Florida law, the Court finds that Defendants' argument that Plaintiffs are unable to state a claim for relief for conversion on the grounds that Plaintiffs are not seeking personalty is without merit.  However, while some of the property claimed by Plaintiffs may constitute recoverable items of personalty under Florida law, summary judgment in favor of Defendants is appropriate on the conversion claim because Plaintiffs have no right in the claimed property under the terms of the lease as discussed in Section 4 of this Order.

### 4. Defendants' Argument that there is an Absence of a Genuine Issue of Material Fact as to Whether Plaintiffs have a Legal Right to the Claimed Property

Defendants argue that in order to maintain an action for replevin, ejectment, or conversion, Plaintiffs must demonstrate that they have a legal right to the property that is being detained or occupied.  Defendants claim that the terms of the lease demonstrate that Plaintiffs have no right to possession of the subject property.

Defendants accurately note that in order to maintain an action for replevin, ejectment, or conversion, the party seeking relief must have a legal right to the property that is being detained or occupied by another.  *Seymour v. Adams*, 638 So. 2d 1044, 1047 (Fla. 5th DCA 1994) ("conversion may occur where a person wrongfully refuses to relinquish property to which another has the right of possession."); *see Baldwin Sod Farms, Inc. v. Corrigan*, 746 So. 2d

-31-

1198, 1205 (Fla. 4th DCA 1999) (explaining that a common law action of ejectment allows a plaintiff to evict one who is wrongfully in possession of the property); *see* FLA. STAT. § 78.01 (2004) ("[a]ny person whose personal property is wrongfully detained by any other person or officer may have a writ of replevin to recover said personal property and any damages sustained by reason of the wrongful taking or detention").

Furthermore, the lease provides that Lessor, in this case the Port Authority, could retain any personal property as security for the amount due to Lessor.  (Doc. No. 26-2, Ex. A," Lease Agreement," Lease Covenants and Conditions, §16).  The Fifth District Court of Appeal found that payment of ad valorem property taxes was part of the rent and that Defendants were owed $80,000 in ad valorem property taxes.  Given the provisions of the lease and the decision of the Fifth District Court of Appeal, Plaintiffs now have the burden of proffering evidence demonstrating that they paid the $80,000 in ad valorem property taxes.  There is no evidence in the record creating a genuine issue of material fact demonstrating that Plaintiffs paid $80,000 in ad valorem property taxes.

Because the lease provides that the Port Authority could retain any personal property as security for the amount due and because the Fifth District Court of Appeal found that Defendants were owed $80,000 in ad valorem property taxes, the Court finds that Plaintiffs have no legally cognizable interest in the claimed property.[8]  Thus, summary judgment in favor of Defendants on Plaintiffs' claims for replevin, ejectment, and conversion is appropriate due to a lack of a legally cognizable interest in the claimed property.

---

[8] The Court will not examine Defendants' argument that Plaintiffs are not entitled to punitive damages because that argument is now moot.

## <u>Conclusion</u>

Based on the foregoing, the Court rules as follows:

1.    Defendants' Request for Judicial Notice (Doc. No. 79) is **GRANTED,** and
      Plaintiffs' Request for Judicial Notice (Doc. No. 84) is **GRANTED IN PART**
      and **DENIED IN PART**  in accordance with this Order.

2.    Plaintiffs' Motion to Strike the Affidavits of Rodney Ketcham, Raymond
      Sharkey, Donald Molitor, Ralph Kennedy, and Joe Matheny is **DENIED**.  (Doc.
      No. 86).

3.    Defendants' Motion for Summary Judgment is **GRANTED**.  (Doc. No. 63).

4.    Defendants' Motion for Extension of Time to File Dispositive Summary
      Judgment Motion is **DENIED** as moot.  (Doc. No. 61).

5.    The Clerk shall enter Final Judgment in favor of Defendants and against Plaintiffs
      on Plaintiffs' claims.

6.    Defendants' request for an Order granting Defendants' attorneys' fees and costs.
      (Doc. No. 63, p. 20) is **DENIED WITHOUT PREJUDICE**.  The Court will
      consider such a request upon appropriate motion by Defendants in accordance
      with Local Rule 4.18.

**DONE** and **ORDERED** in Chambers in Orlando, Florida on November _15___, 2005.

-33-

PATRICIA C. FAWSETT, CHIEF JUDGE
UNITED STATES DISTRICT COURT

Copies furnished to:

Counsel of Record
Unrepresented Parties