UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**RAYMOND J. CASCELLA, MANOS, INC.,**
a Florida corporation, and **ROLAND CARLSON**

           **Plaintiffs,**

-vs-                                                                      Case No.  6:04-cv-1822-Orl-19DAB

**CANAVERAL PORT DISTRICT d/b/a CANAVERAL PORT AUTHORITY as provided by Florida Senate Bill No. 3040, CHAPTER 95-465, LAWS OF FLORIDA,** Commissioners **RODNEY S. KETCHAM, RAYMOND P. SHARKEY, DONALD N. MOLITOR, RALPH J. KENNEDY, JOE D. MATHENY in their individual and official capacities, HAROLD T. BISTLINE, Florida Bar. No. 0337218, and WILLIAM P. BANCROFT, employees, official capacity and individual capacity, singly, jointly and severally,**

           **Defendants.**
_____

# ORDER

This case comes before the Court on the following:

1. Defendants' Motion to Determine Entitlement to Attorneys' Fees and Costs and Memorandum of Law in Support.  (Doc. No. 92, filed on November 29, 2005); and

2. Affidavit of Candy L. Messersmith in Support of Defendants' Motion to Determine Entitlement to Attorneys' Fees and Costs.  (Doc. No. 93, filed on November 29, 2005); and

      3.      The Response of Plaintiffs Raymond Cascella, Manos, Inc., and Roland Carlson to Defendants' Motion to Determine Entitlement to Attorneys' Fees and Costs. (Doc. No. 101, filed on December 13, 2005).

**Background**

This action arose from a lease agreement between Raymond J. Cascella and the Canaveral Port Authority ("Port Authority"). (*See* Doc. No. 90, filed on November 15, 2005, p. 4). Manos, Inc. and Roland Carlson were Cascella's sublessees. (Doc. No. 65, "Raymond Cascella Deposition," filed on September 15, 2005, pp. 48, 49, 61, 62).

Cascella has filed numerous suits against the Port Authority in relation to the lease agreement. In October 1996, Cascella filed suit against the Port Authority in the Eighteenth Judicial Circuit, Brevard County, Florida, alleging that the Port Authority breached Cascella's covenant of quiet enjoyment. (Doc. No. 14, Ex. A, "March 9, 2001 Bankruptcy Court Opinion," filed on January 5, 2005, p. 3). Cascella sought damages in excess of $15,000 as a result of the alleged breach of the covenant. (*Id.*) In response, the Port Authority filed a counterclaim against Cascella due to Cascella's failure to install fire walls required by the terms of the lease. (*Id.*)

In March 1999, the Port Authority filed an action to evict Cascella and to recover damages for Cascella's failure to pay $80,000 in ad valorem property taxes on the leased premises. *Cascella v. Canaveral Port Authority*, 827 So.2d 308-09 (Fla. 5th DCA 2002). The state trial court found that the lease made payment of the ad valorem property taxes part of the rent and that the Port Authority was entitled to summary eviction. *Id.* at 310. Two days later, Cascella filed in the state trial court notice of a Chapter 13 bankruptcy proceeding he had filed. *Id.* On May 5, 1999, Cascella's state court action was then removed to the United States Bankruptcy Court for the Middle District of Florida. (Doc. No.

14, Ex. A, p. 3).

During the bankruptcy proceeding, Cascella sought relief for breach of the covenant of quiet enjoyment and alleged that his due process rights were violated by the Port Authority's termination of the leasehold premises. (*Id.* at 3, 4). The Bankruptcy Court found that the Port Authority provided Cascella due process, that the Port Authority did not violate Cascella's covenant of quiet enjoyment, and that the lease was validly terminated by the Port Authority prior to the bankruptcy petition date. (*Id.* at 5, 6).

Two years into the Chapter 13 bankruptcy proceeding, Cascella fell behind in making the payments ordered pursuant to his confirmed bankruptcy plan. *Cascella*, 827 So. 2d at 310. The Bankruptcy Court dismissed the case, lifted the automatic stay imposed by 11 U.S.C. section 362, and enjoined Cascella from filing for relief pursuant to 11 U.S.C. sections 105(a) and 109(g) for a period of 180 days from the effective date of the Order. (Doc. No. 63, Ex. E, "November 9, 2001 Bankruptcy Court Order Dismissing Case," filed on September 15, 2005).

Upon dismissal of the plan, Cascella converted his case into a Chapter 7 liquidation. *Cascella*, 827 So. 2d at 310. The Port Authority then moved for relief from the automatic stay provisions of the bankruptcy code. *Id.* On January 11, 2002, the Bankruptcy Court modified the automatic stay to permit the eviction to proceed. *Id.* On February 18, 2002, the state trial court conducted a hearing and concluded that eviction was proper because Cascella failed to pay the portion of his rent consisting of ad valorem property taxes. *Id.* Cascella appealed that ruling to the Fifth District Court of Appeal which affirmed the eviction order. *Id.* Cascella's appeal to the Florida Supreme Court was dismissed. *Cascella v. Canaveral Port Authority*, 838 So. 2d 558 (Fla. 2002).

Cascella then filed an appeal with the United States District Court for the Middle District of

Florida, challenging the jurisdiction of the state trial court and its order of eviction, the Bankruptcy Court's ruling regarding the original removal of the state court action, the Bankruptcy Court's order granting relief from the stay, and the Bankruptcy Court's jurisdiction. (Doc. No. 14, Ex. D, "December 11, 2002 Middle District of Florida Order," p. 3). The federal trial court rejected Cascella's arguments and denied his request for relief. (*Id.* at 4-7).

Cascella then filed a writ of mandamus in the United States Court of Appeals for the Eleventh Circuit, asking the appellate court to quash the Fifth District Court of Appeal's decision in *Cascella v. Canaveral Port Authority*, 827 So.2d 308 (5th DCA 2002), and to issue a writ of prohibition to preclude the Port Authority and the state trial courts and appeals courts from assuming jurisdiction. (Doc. No. 14, Ex. E, "February 7, 2003 Eleventh Circuit Order," p.1). The Eleventh Circuit rejected Cascella's writ. (*Id.* at 2-3).

After filing the writ of mandamus in the Eleventh Circuit, Cascella filed another appeal to the Eleventh Circuit, arguing that the Bankruptcy Court did not have jurisdiction over the previously removed state court eviction proceeding. (Doc. No. 14, Ex. F, "July 3, 2003 Eleventh Circuit Judgment," p. 2). The Eleventh Circuit rejected Cascella's argument, and the United States Supreme Court denied Cascella's Petition for Certiorari. (*Id.* at 7); *Cascella v. Canaveral Port Authority*, 540 U.S. 1112 (2004).

On September 7, 2005, Plaintiffs Raymond Cascella, Manos, Inc., and Roland Carlson filed in this Court a Single Amended Complaint against Defendants Canaveral Port District d/b/a Canaveral Port Authority, Commissioners Rodney S. Ketcham, Raymond P. Sharkey, Donald N. Molitor, Ralph J. Kennedy, and Joe D. Matheny, Attorney Harold T. Bistline, and William P. Bancroft. (Doc. No. 57). The Single Amended Complaint contains four counts which include claims for violations of 42

U.S.C. section 1983, replevin, ejectment, and conversion.

On September 15, 2005, Defendants filed a Motion for Summary Judgment. (Doc. No. 63).

On November 15, 2005, the Court granted Defendants' Motion for Summary Judgment. (Doc. No. 90). In the thirty-four page Order containing extensive research and analysis of the claims in this case, the Court found that: 1) summary judgment in favor of Defendants was appropriate as to the ejectment claim and the allegation that Defendants illegally obtained a writ of eviction because the elements of collateral estoppel were met; 2) summary judgment in favor of Defendants was appropriate on the Fourth and Fourteenth Amendment seizure claims based on the decision of the Fifth District Court of Appeal in *Canaveral Port Authority*, 827 So.2d 308 (Fla. 5th DCA 2002); 3) summary judgment in favor of Defendants was appropriate on Plaintiffs' allegations that planting trees in front of a sign and not immediately allowing a lease to be assigned when the lessee is in violation of the lease terms for failure to pay $80,000 in ad valorem property taxes because such allegations did not state a claim under 42 U.S.C. section 1983 and were barred by res judicata; 4) summary judgment in favor of Defendants was appropriate as to Plaintiffs' allegation that Defendants failed to obtain a remand from the Bankruptcy Court to the state court because a remand was unnecessary in this case and a failure to obtain a remand is not actionable conduct under section 1983; 5) Plaintiffs had failed to meet the notice requirements of Florida Statutes, Section 768.28(6); 6) Plaintiffs had failed to state a claim for relief for ejectment due to a lack of a legally cognizable interest in the real property; and 7) summary judgment in favor of Defendants was appropriate on the conversion, ejectment, and replevin claims because Plaintiffs had no right in the claimed property based on the terms of the lease.

On November 29, 2005, Defendants filed a Motion to Determine Entitlement to Attorneys' Fees and Costs. (Doc. No. 92). Defendants argue that they are entitled to attorneys' fees and costs in

this case on the basis of 42 U.S.C. section 1988, the attorneys' fees provision in the lease agreement, and the inherent power of the Court to sanction a party for bad faith conduct. Defendants cite the extensive litigation history of this case as evidence that Plaintiffs' conduct was unreasonable, frivolous, and in bad faith.

On December 13, 2005, Plaintiffs filed a Response to Defendants' Motion to Determine Entitlement to Attorneys' Fees and Costs in which Plaintiffs merely reiterated arguments already made in their Motion to Alter the Judgment and to Clarify the Language of the Order on Page 15. (Doc. No. 101); (*See* Doc. No. 91, filed on November 22, 2005).

This Order analyzes Defendants' Motion to Determine Entitlement to Attorneys' Fees and Costs.

**Analysis**

***1. Defendants' Argument that They are Entitled to Attorneys' Fees and Costs under 42 U.S.C. Section 1988 Because Plaintiffs' Suit was Frivolous***

The United States Congress has determined that a court, in its discretion, may award reasonable attorneys' fees under 42 U.S.C. section 1988 as part of the costs of litigating an action under 42 U.S.C. section 1983. 42 U.S.C. § 1988(b). Section 1988(b) does not distinguish between prevailing plaintiffs and prevailing defendants. *See id.* However, the Supreme Court has developed two distinct standards–one for prevailing civil rights plaintiffs and another for prevailing civil rights defendants. Because plaintiffs in civil rights cases play the role of a private attorney general and vindicate a policy that Congress considers of the highest priority, the Supreme Court has found that a prevailing plaintiff should recover an attorney's fee unless special circumstances would render an award unjust. *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 416-17 (1978) (internal citations and quotations omitted).

A more rigorous standard applies to fee awards to prevailing defendants in civil rights cases. *See Hughes v. Rowe*, 449 U.S. 5, 14 (1980). A prevailing defendant may recover its attorney's fees only when it establishes that the plaintiff's actions were frivolous, unreasonable, or without foundation, even though the action was not brought in bad faith. *Christiansburg*, 434 U.S. at 422; *see Hensley v. Eckerhart*, 461 U.S. 424, 429 n.2 (1984); *see also Hughes v. Rowe*, 448 U.S. 5, 14 (1980).

A case is frivolous if it is "so lacking in arguable merit as to be groundless or without foundation." *Sullivan v. Sch. Bd. of Pinellas County*, 773 F.2d 1182, 1188 (11th Cir. 1985) (internal citation omitted). Courts must not focus on whether the claim was ultimately successful in determining frivolity. *Id.* While engaging in *post hoc* reasoning regarding the frivolity of a claim is an understandable temptation, especially where the plaintiff does not prevail, this kind of hindsight logic would ultimately discourage all but the most airtight claims because a plaintiff is seldom sure of ultimate success. *Christiansburg*, 434 U.S. at 421-22. Even when the law or the facts appear questionable at the outset, a party may have a reasonable ground for bringing suit. *Id.* at 422.

Cases where findings of frivolity have been sustained typically have been decided in the defendant's favor on a motion for summary judgment or a Federal Rule of Civil Procedure 41(b) motion for involuntary dismissal. *Sullivan*, 773 F.2d at 1189. In these cases, the plaintiffs failed to introduce any evidence to support their claims. *Id.* (internal citations omitted). If a plaintiff introduces evidence sufficient to support his claims, a finding of frivolity does not stand. *Id.*

In determining whether a claim is frivolous, important factors include whether the plaintiff established a prima facie case, whether the defendant offered to settle, and whether the trial court dismissed the case prior to trial or held a full-blown trial on the merits. *Id.* (internal citation omitted). These factors are general guidelines only and are not hard and fast rules because determinations

regarding frivolity should be based on a case-by-case basis. *Id.* Courts applying these factors have been reluctant to award fees unless the plaintiffs refused to acknowledge clear precedent or asserted a claim which was based knowingly on a nonexistent interest. *See, e.g., Head v. Medford*, 62 F.3d 351, 356 (11th Cir. 1995)("the assertion of a constitutional claim based knowingly on a nonexistent property interest was legally groundless").

Defendants argue that they are entitled to attorneys' fees based on the factors articulated by the Eleventh Circuit in *Sullivan v. School Board of Pinellas County*, 773 F.2d 1182, 1189 (11th Cir. 1985). First, Defendants claim that they are entitled to attorneys' fees under section 1988 because Plaintiffs failed to identify any conduct engaged in by Defendants that violated their constitutional rights or were not otherwise barred by the doctrine of res judicata. Defendants further contend that they are entitled to fees because Plaintiffs were unable to demonstrate that they had any legally cognizable interest in the property they claimed was taken. Because Plaintiffs failed to bring forth evidence to support their claims, Defendants argue that Plaintiffs failed to establish a prima facie case. Second, Defendants highlight the fact that no settlement offer was made and that Defendants filed a motion to forego mediation based in part upon Defendants' position that Plaintiffs' claims completely lacked merit. Third, Defendants argue that under *Sullivan* the Court must consider whether or not the case was dismissed prior to trial. Because this case was dismissed at the summary judgment stage, Defendants contend that the third *Sullivan* factor has been met.

Defendants claim that an application of the *Sullivan* factors leads to the ultimate conclusion that they are entitled to attorneys' fees. The *Sullivan* Court, however, cautioned that the three factors are merely guidelines to be applied rather than mechanical elements that govern the disposition of attorneys' fees motions under section 1988. If the Court were to accept Defendants' argument in the


instant case, it would have the effect of creating an inflexible rule based on the *Sullivan* factors rather than an examination of all the facts of the case.

An analysis of all the factors surrounding this case leads to the conclusion that an attorneys' fees award is not appropriate under 42 U.S.C. section 1988.  First, the claims in the instant case are not identical to the claims raised in the earlier litigation such that it should have been apparent to Plaintiffs that the instant suit was barred.  The earlier litigation addressed the breach of the covenant of quiet enjoyment, whether the lease made the payment of the ad valorem property taxes part of the rent, and whether the Port Authority afforded due process to Cascella.  The instant suit addressed whether Defendants failed to obtain a remand in violation of 42 U.S.C. section 1983, whether Defendants violated the Fourth and Fourteenth Amendments by illegally seizing Plaintiffs' property, and whether Plaintiffs were entitled to relief related to their real and personal property under replevin, ejectment, and conversion law.  The claims relating to Plaintiffs' personal property would not have ripened until after the eviction took place and thus are completely unrelated to the earlier litigation which focused on the propriety of the eviction.

Second, merely because Plaintiffs did not succeed in proving their claims does not mean that their law suit was abjectly frivolous.  This case was dismissed at the summary judgment stage based in large part upon the applications of res judicata and collateral estoppel.  Considering that these doctrines involve a complex analysis of subtle legal deficiencies that many lawyers do not fully comprehend, it cannot be said that Plaintiffs' failure to understand the myriad of factual and legal issues surrounding the application of these doctrines means that their suit was frivolous.  Awarding attorneys' fees on the basis of the fact that the suit was dismissed based largely on the application of res judicata would be an incorrect application of the legal standard on frivolous suits under 42 U.S.C.

section 1988. *See Chester v. St. Louis Housing Auth.*, 873 F.2d 207, 209 (8th Cir. 1989) (explaining that the legal standard for an attorneys' fees award under 42 U.S.C. section 1988 required the trial court to determine whether the claim was groundless and without foundation and that merely relying on res judicata as a basis for an attorneys' fees award was insufficient because res judicata involves difficult procedural rules); *see also Jones v. Texas Tech Univ.*, 656 F.2d 1137, 1145-46 (5th Cir. Unit A Sept. 1981) (relying merely on a finding of res judicata as the basis for a bad faith attorneys' fees award is insufficient). Furthermore, in the Summary Judgment Order, the Court noted that two allegations in particular, which were Plaintiffs' allegation that Defendants violated 42 U.S.C. section 1983 by failing to obtain a remand to the state court after the Bankruptcy Court denied Defendants' Motion for Summary Judgment and Plaintiffs' allegation that Defendants illegal seized Plaintiffs' personal property in violation of the Fourth and Fourteenth Amendments, were not immediately disposable on the basis of res judicata and could only be dismissed based upon a further analysis of the lease terms and extensive research on federal remand law. Because these subtle, complex deficiencies are not immediately apparent even to the trained legal eye and because the claims in the instant case are different from the claims in the earlier litigation, the Court finds that Plaintiffs' suit was not frivolous and that Defendants are not entitled to attorneys' fees and costs under 42 U.S.C. section 1988.

### *2. Defendants' Argument that They are Entitled to Attorneys' Fees and Costs Based on the Lease*

Defendants' second argument in support of its Motion to Determine Entitlement to Attorneys' Fees and Costs is based on the lease agreement between Cascella and the Port Authority. Manos, Inc. and Carlson are sublessees of Cascella.

The relevant provision of the lease agreement states:

> Should either party commence an action against the other to enforce any obligation hereunder or for a determination of its rights or duties hereunder or in connection herewith or in any way relating to the leased premises, the prevailing party shall be entitled to recover a reasonable attorney's fee and all costs and expenses incurred in such action.

(Doc. No. 26-2, "Lease Agreement," Lease Covenants and Restrictions, § 29, filed on January 19, 2005).

The lease provision clearly imposes liability on Plaintiff Cascella for pursuing this litigation because several of his claims were directly related to the leased premises. Cascella filed three complaints in this case. The first complaint contains claims pursuant to 42 U.S.C. section 1983, conspiracy to commit bankruptcy fraud, fraud, and contempt of court. (Doc. No. 1, filed on December 14, 2004). The Amended Complaint, which was the second complaint filed by Cascella in this case, has claims pursuant to 42 U.S.C. section 1983, conspiracy to commit bankruptcy fraud, fraud, contempt of court, replevin, ejectment, and conversion. (Doc. No. 20, filed on January 11, 2005). Of the claims contained in these complaints, the claims relating to conspiracy to commit bankruptcy fraud, fraud, and contempt of court are unrelated to the lease agreement because these claims arose out of statements allegedly made to the bankruptcy court. (*See* Doc. No. 53, filed on August 31, 2005, pp. 14-17). In addition, the allegation relating to the failure to obtain a remand in Count I of both complaints is unrelated to the lease agreement because this issue focused on the procedural complexities surrounding 28 U.S.C. section 1446.

The Single Amended Complaint, which was the third complaint filed by Cascella in this case, contains four counts. (Doc. No. 57). Count I is a cause of action under 42 U.S.C. section 1983 for Defendants' alleged action of obtaining an illegal writ of eviction, for failing to obtain a remand, and for allegedly violating the Fourth and Fourteenth Amendments to the Constitution by depriving Cascella of his property. Count II is a claim for replevin relating to Cascella's personal property.

Count III is a claim for ejectment relating to the possession of the real property, and Count IV is a conversion claim for damages for loss of the leasehold interest, loss of a metal building, and loss of income. Except for Cascella's allegation that Defendants' failed to obtain a remand, all of the allegations relate to the rights of Cascella and Defendants under the lease. The Court's analysis in the Summary Judgment Order referenced section 16 of the lease agreement for the proposition that Defendants could hold Cascella's personal property if there was any monetary amount due which ultimately led the Court to dismiss the Fourth and Fourteenth Amendment seizure claims and the ejectment, replevin, and conversion claims. (Doc. No. 90, pp. 21-22, 31-32). Cascella's allegation that Defendants illegally obtained a writ of eviction also arose out of the terms of the lease because that finding was ultimately based on the decision of the Fifth District Court of Appeal which found that payment of ad valorem property taxes was part of the terms of the lease. (*Id.* at 19-20). Because Cascella pursued litigation relating to the leased premises and was not the prevailing party, Defendants are entitled to attorneys' fees and costs from Cascella as to such his claims, except for time spent by Defendants' counsel litigating the remand issue in all three complaints and the conspiracy to commit bankruptcy fraud, fraud, and contempt of court claims in the first complaint and the Amended Complaint.

Regarding Plaintiffs Manos, Inc. and Carlson, the record reflects that Manos, Inc. and Carlson were sublessees of Cascella. There is no reference in the record to a written sublease agreement signed by these two Plaintiffs.[1] As a general rule, express restrictions contained in the original lease

---

[1] Carlson testified by affidavit that he entered into an oral agreement with Cascella in 1998 to lease the southwest corner of Cascella's leasehold property to sell shrimp and to manage and look after the security of the leasehold. (Doc. No. 29-2, "Roland Carlson Affidavit," filed on January 19, 2005, p.1).
   Also included as part of a record is an unsworn, unauthenticated document signed by

regarding the use of the land are binding on a sublessee under a sublease. *Dunn v. Barton*, 16 Fla. 765, *5 (Fla. 1878) ("The sublessee is in possession of the estate of his lessor, and he is bound by his covenants which relate to the occupation of the premises."). The attorneys' fees provision in the lease agreement is not related to the use of the land and, thus, would not be binding on Manos, Inc. and Carlson under this line of reasoning.

In addition to the fact that the attorneys' fees provision in the lease is not a covenant related to the use of the land, it is an established rule in Florida that attorneys' fees may not be awarded unless provided for by statute or by agreement of the parties. *Laundry v. Virginia Bond & Mortgage*, 121 Fla. 312, 315 (Fla. 1935); *see also Tamiami Abstract and Title Co. v. Malanka*, 185 So.2d 493, 495 (Fla. 1966). Defendants have not cited a statute to the Court nor has the Court found a statute through its own independent research demonstrating that Defendants are entitled to attorneys' fees from Manos, Inc. and Carlson under the facts of the instant case. Furthermore, while there is an agreement between Cascella and the Port Authority which entitles the prevailing party to attorneys' fees, there is no agreement between Manos, Inc., and Carlson on the one hand and the Port Authority on the other permitting an attorneys' fees award to the prevailing party.

Therefore Defendants are entitled to make application for attorneys fees and costs against Plaintiff Cascella under the terms of the written lease agreement but have not shown themselves to be so entitled as to Plaintiffs Manos, Inc. and Roland Carlson.

---

Cascella in which Cascella purportedly stated that he agreed to allow Carlson to use a section of his property as a payback for a loan. (Doc. No. 29-2, "Agreement of Loan of Land Property," filed on January 19, 2005). There is no reference to the attorneys' fees provision in Cascella's statement nor is there a statement binding Carlson to the terms of the lease between Cascella and the Port Authority.

### *3. Defendants' Argument that They are Entitled to Attorneys' Fees and Costs Based on the Inherent Power of the Court to Sanction a Party*

Defendants third argument in support of its Motion to Determine Entitlement to Attorneys' Fees and Costs is that the extensive litigation history in this case demonstrates that Plaintiffs acted in bad faith. Defendants claim that this bad faith allows the Court to award attorneys' fees to Defendants based on the inherent powers of the Court.

The American Rule prohibits fee shifting as a general rule. *See Alyeska Pipelines Serv. Co. v. Wilderness Soc.*, 421 U.S. 240, 257 (1975). An exception to the American Rule exists when a losing party has "acted in bad faith, vexatiously, wantonly or for oppressive reasons." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45-46 (1991) (internal citations and quotations omitted).

Before the Court may impose sanctions against a party pursuant to its inherent power, it must find that the party acted in bad faith. *Id.* at 49*; see also Durrett v. Jenkins Brickyard, Inc.*, 678 F.2d 911, 918 (11th Cir. 1982); *see also Barnes v. Dalton*, 158 F.3d 1212, 1214 (11th Cir. 1998). A finding of bad faith is proper where an attorney "knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for the purpose of harassing an opponent." *Barnes*, 158 F.3d at 1214 (internal citation and quotations omitted). A party also demonstrates bad faith by delaying or disrupting the litigation or hampering enforcement of a court order." *Id.* Inherent powers must be exercised with restraint and discretion. *Barnes*, 158 F.3d at 1215 (citing *Chambers*, 501 U.S. at 44-45).

Applying this standard to the facts of the instant case, it cannot be said that Plaintiffs knowingly or recklessly raised frivolous arguments because the instant litigation is different from the earlier litigation, both in terms of procedural posture and the nature of the claims raised, and hinged on an analysis of the subtle complexities of the res judicata doctrine as discussed in Section 1 of this

Order.  Given the difficult nuances presented by this litigation both in terms of facts and research on procedural and substantive issues, it also cannot be said that Plaintiffs brought this case for the purpose of harassing Defendants because it would not be readily apparent that the claims were without merit. Because the record does not support that Plaintiffs acted in bad faith in bringing this suit, the Court finds that Defendants are not entitled to attorneys' fees and costs on the basis of the inherent powers of the Court.

## Conclusion

1. Based on the foregoing, the Court **GRANTS** in part and **DENIES** in part Defendants' Motion to Determine Entitlement to Attorneys' Fees and Costs.  (Doc. No. 92).

2. Defendants are entitled to assert a claim for attorneys fees and costs against Plaintiff Raymond J. Cascella as to such Plaintiff's claims, except for those attorneys' fees and costs incurred in litigating the remand issue in the first complaint, Amended Complaint, and Single Amended Complaint and the claims for conspiracy to commit bankruptcy fraud, fraud, and contempt of court in the first complaint and the Amended Complaint.

3. In all other respects, Defendants' motion is **denied**.

4. Within ten (10) days from the date of this Order, Defendants shall file with the Court their application for the attorneys' fees and costs to which they contend they are entitled to recover against Plaintiff Raymond J. Cascella in conformance with this Order. Plaintiff Cascella has ten (10) days thereafter in which to respond to such application.

**DONE** and **ORDERED** in Chambers in Orlando, Florida on January __9th____ 2006.

_____
PATRICIA C. FAWSETT, CHIEF JUDGE
UNITED STATES DISTRICT COURT

Copies furnished to:

Unrepresented Party
Counsel of Record